IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

CASE NOS. 23-11985-HH & 24-11024

AST & SCIENCE LLC,

*Plaintiff-Appellee,*

v.

DELCLAUX PARTNERS SA,

*Defendant-Appellant.*

BRIEF OF DEFENDANT-APPELLANT DELCLAUX PARTNERS SA

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Joseph J. Mamounas
Adrian Nuñez
Bethany J. M. Pandher
Greenberg Traurig, P.A.
Wells Fargo Center, Suite 4400
333 Southeast Second Avenue
Miami, Florida 33131
Telephone: 305.579.0500
mamounasj@gtlaw.com
nuneza@gtlaw.com
bethany.pandher@gtlaw.com
miamiappellateservice@gtlaw.com

*Counsel for Defendant-Appellant Delclaux Partners SA*

## AST & Science LLC v. Delclaux Partners SA
## Case Nos. 23-11985-HH & 24-11024

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Defendant-Appellant Delclaux Partners SA, provides the following certificate of interested persons:

1.　AST & Science LLC (AST) – Plaintiff-Appellee

2.　Delclaux Partners SA (Delclaux) – Defendant-Appellant

3.　Delclaux, Pedro – Co-Owner of Delclaux

4.　Edmondson, Jr., Joseph D. – Counsel for AST

5.　Foley & Lardner LLP – Counsel for AST

6.　Fornaro, Matthew – Former Counsel for Delclaux

7.　Gayles, Darrin P. – U.S. District Judge

8.　Greenberg Traurig, P.A. – Counsel for Declaux

9.　Holaday, Mark – Co-Owner of Delclaux

10.　Joseph, Jessica Elizabeth – Counsel for AST

11.　Law Office of William Coudert Rand – Former Counsel for Delclaux

12.　LionTree Advisors LLC – privately owned broker dealer

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT
(Continued)**

13.  Mamounas, Joseph J. – Counsel for Delclaux

14.  Matthew Fornaro, P.A. – Former Counsel for Delclaux

15.  Neuberger, Mark J. – Counsel for AST

16.  Nuñez, Adrian – Counsel for Delclaux

17.  Otazo-Reyes, Alicia M. – U.S. Magistrate Judge

18.  Pandher, Bethany J. M. – Counsel for Delclaux

19.  Picco, Andrea – Counsel for AST

20.  Rand, William C. – Former Counsel for Delclaux

21.  Raux, Geoffrey M. – Counsel for AST

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh
Circuit Rules 26.1-1 through 26.1-3 and 27-1(6), Delclaux makes the
following statement as to its corporate ownership: Delclaux has no parent
corporation and no public corporation owns 10% or more of its stock.

    /s/ Bethany J. M. Pandher
    Bethany J. M. Pandher

## STATEMENT REGARDING ORAL ARGUMENT

A threshold inquiry as to subject matter jurisdiction is dispositive of this appeal. To save the final judgment, the district court manufactured its own jurisdiction, finding that AST's state-law breach of contract claim supports federal question jurisdiction. The pleadings, however, reveal that this straightforward contract dispute, arising under Florida and New York law, never belonged in federal court. Because even an arguable basis for subject matter jurisdiction is lacking, the Court may resolve this dispute without oral argument, based on the jurisdictional defect that plagues the final judgment.

If the Court finds jurisdiction is proper, the district court's serial errors support, at a minimum, vacating the final judgment and reversal of summary judgment in favor of AST on Delclaux's counterclaim for breach of contract. Given the procedural complexities, including the district court's misapprehension of the timing of the transactions at issue, and the court's incorrect rulings interpreting the operative agreements, if this Court proceeds to the merits, Delclaux respectfully submits that oral argument will aid the Court in resolving this case.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ................................................................. C-1

STATEMENT REGARDING ORAL ARGUMENT ................................... i

TABLE OF CITATIONS .............................................................................. v

STATEMENT OF JURISDICTION ............................................................ 1

STATEMENT OF THE ISSUES ................................................................. 2

STATEMENT OF THE CASE AND FACTS ............................................ 3

I.    STATEMENT OF THE CASE. ........................................................... 3

II.   STATEMENT OF THE FACTS. ........................................................ 5

      A.    AST, Delclaux, and LionTree Advisors LLC. .......................... 5

      B.    AST Terminates the LionTree Agreement But Keeps
           Closing Transactions. ................................................................. 9

      C.    Litigation Ensues. ...................................................................... 12

      D.    The New Providence Transaction. ........................................... 14

      E.    The Competing Summary Judgment Motions. ...................... 14

      F.    The Magistrate Judge's Report and Recommendation. ....... 15

      G.    Delclaux's Objections to the Report and Alternative
           Motion for Leave to Amend Delclaux's Counterclaim. ......... 16

      H.    The District Court's Rulings. .................................................... 18

      I.    The Post-Judgment Motion. ...................................................... 19

SUMMARY OF ARGUMENT ................................................................... 21

ARGUMENT ............................................................................................... 23

I.    STANDARD OF REVIEW. ...........................................................23

II.   THE FINAL JUDGMENT AND UNDERLYING SUMMARY
      JUDGMENT ARE VOID FOR THE COURT'S LACK OF
      SUBJECT MATTER JURISDICTION. ........................................24

      A.    The    District    Court    Lacked    Federal    Question
            Jurisdiction at the Time AST Filed This Action. .................24

      B.    The District Court Lacked Diversity Jurisdiction at the
            Time AST Filed This Action..................................................31

III.  DELCLAUX—NOT AST—WAS ENTITLED TO SUMMARY
      JUDGMENT ON DELCLAUX'S COUNTERCLAIM FOR
      BREACH OF CONTRACT. ...........................................................34

      A.    The Magistrate Judge Disregarded the Plain Language
            of the LionTree Agreement Entitling Delclaux to its
            Fees and Incorrectly Interpreted Key Terms. ......................34

      B.    The    Magistrate    Judge    Incorrectly    Assumed    the
            LionTree Agreement Was Ambiguous and Considered
            Improper Extrinsic Evidence. ...............................................37

            i.    The    term    "agreement"    in    the    First    Tail    is
                  unambiguous....................................................................37

            ii.   The terms "introduced," "contact," and "developed or
                  pursued" in the Second Tail are unambiguous and
                  untethered to a "causal" requirement. ...........................42

      C.    Even if the LionTree Agreement Had Ambiguity, the
            Meaning of its Terms Presented Fact Questions for a
            Jury.....................................................................................45

D. The Magistrate Judge Incorrectly Recommended Denial of Delclaux's Motion for Summary Judgment on its Counterclaim. ........................................................................47

    i. *Undisputed Evidence Proves AST Breached the LionTree Agreement by Failing to Pay Delclaux for Fees Owed Under the First Tail.* ....................................47

    ii. *Undisputed Evidence Proves AST Breached the LionTree Agreement by Failing to Pay Delclaux for Fees Owed Under the Second Tail.* ................................50

    iii. *Undisputed Evidence Proves AST Breached the LionTree Agreement by Failing to Pay Delclaux for Fees Owed Under the ROFR.* ...........................................51

E. The District Court Improperly Adopted the Magistrate Judge's Report and Recommendation Over Delclaux's Objections. ........................................................................52

CONCLUSION ........................................................................54

CERTIFICATE OF COMPLIANCE ....................................................56

CERTIFICATE OF SERVICE ........................................................56

# TABLE OF CITATIONS

**Page(s)**

## Cases

*Americold Realty Tr. v. Conagra Foods, Inc.,*
    577 U.S. 378 (2016) ............................................................... 31

*Arthur the Dog v. U.S. Merch. Inc.,*
    No. 05-0958, 2007 WL 2493427
    (E.D.N.Y. Aug. 29, 2007) ................................ 35, 39, 44, 45

*Ayres v. Gen. Motors Corp.,*
    234 F.3d 514 (11th Cir. 2000) ........................................... 25

*Bel-Bel Int'l v. Cmty. Bank,*
    162 F.3d 1101 (11th Cir. 1998) ......................................... 31

*Bender v. Williamsport Area Sch. Dist.,*
    475 U.S. 534 (1986) ............................................................ 24

*Bochese v. Town of Ponce Inlet,*
    405 F.3d 964 (11th Cir. 2005) ........................................... 23

*Caron v. NCL (Bah.), Ltd.,*
    910 F.3d 1359 (11th Cir. 2018) ......................................... 32

*CBRE Inc. v. Pace Gallery of N.Y. Inc.,*
    No. 17-02452, 2021 WL 1198644
    (S.D.N.Y. Mar. 30, 2021) ..................................... 34, 37, 53

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ..................... 48

*Clark v. Coats & Clark, Inc.,*
    929 F.2d 604 (11th Cir. 1991) ........................................... 48

*Davis v. Eagle Oil & Gas Co.,*
    No. 08-CA-107, 2008 WL 11334171
    (W.D. Tex. Oct. 10, 2008) ................................................. 27

Page(s)

*Deutsche Bank Secs., Inc v. Rhodes,*
    578 F. Supp. 2d 652 (S.D.N.Y. 2008) .................................. 41

*Dunlap v. GL Holding Grp., Inc.,*
    381 F.3d 1285 (11th Cir. 2004) ............................. 26, 29, 34

*Empire Healthchoice v. McVeigh,*
    547 U.S. 677 (2006) ............................................ 25

*Fordham Fin. Mgmt. Inc. v. Rekor Sys. Inc.,*
    No 654571/2020, 2022 WL 10085807
    (N.Y. Sup. Ct. Oct. 7. 2022) ................................. 51

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,*
    545 U.S. 308 (2005) ............................... 26, 27, 30

*Grupo Dataflux v. Atlas Glob. Grp., L.P.,*
    541 U.S. 567 (2004) ...................................... 31, 32

*Gunn v. Minton,*
    568 U.S. 251 (2013) ............................................ 26

*IGY Ocean Bay Props. Ltd. v. Ocean Bay Props. I Ltd.,*
    534 F. Supp. 2d 446 (S.D.N.Y. 2008) ......................... 33

*King v. Cessna Aircraft,*
    505 F.3d 1160 (11th Cir. 2007) ........................... 23, 24

*Les Pecheries Norref Quebec Inc. v. Sea Delight Grp., LLC,*
    No. 21-CV-62102, 2022 WL 673764 (S.D. Fla. Feb. 16,
    2022), *report and recommendation adopted*, No. 21-CV-
    62102, 2022 WL 673739 (S.D. Fla. Mar. 7, 2022) ...... 32, 33

*LoConte v. Dugger,*
    847 F.2d 745 (11th 1988) .................................... 53

*Mallory & Evans Contractors & Eng'rs, LLC v. Tuskegee
Univ.,*
663 F.3d 1304 (11th Cir. 2011)...................................................... 32

*McNamara v. Gov't Emps. Ins. Co.,*
30 F.4th 1055 (11th Cir. 2022) ....................................................... 24

*MDS (Canada) Inc. v. Rad Source Techs., Inc.,*
720 F.3d 833 (11th Cir. 2013), *certified question answered,*
143 So. 3d 881 (Fla. 2014) ............................................................. 30

*Merrell Dow Pharms., Inc. v. Thompson,*
478 U.S. 804 (1986)........................................................................ 26

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning,*
578 U.S. 374 (2016)........................................................................ 28

*Metro. Life Ins. Co. v. RJR Nabisco Inc.,*
906 F.2d 884 (2d Cir. 1990) ........................................................... 53

*Mobil Oil Corp. v. Coastal Petroleum Co.,*
671 F.2d 419 (11th Cir. 1982)................................................... 25, 27

*Nationstar Mortg. LLC v. Goeke,*
57 N.Y.S.3d 223 (2017) ............................................................ 45, 47

*Richards v. Direct Energy Servs. LLC,*
915 F.3d 88 (2d Cir. 2019) ............................................................. 41

*Ruhrgas AG v. Marathon Oil Co.,*
526 U.S. 574 (1999)........................................................................ 32

*S. Cal. Fed. Sav. & Loan Ass'n v. Fugazy Exp. Inc.,*
No. 85 CIV. 2723, 1988 WL 5347 (S.D.N.Y. Jan. 15, 1988)... 36, 37, 39

*Slattery Skanksa, Inc. v. Am. Home Assur. Co.,*
885 N.Y.S.2d 264 (2009) .......................................................... 53, 54

# TABLE OF CITATIONS
## (Continued)

*Steel Co. v. Citizens for Better Env't*,
523 U.S. 83 (1998) .................................................................. 25

*Strickler v. Chase Manhattan Mortg. Co.*,
No. 14-CA-858, 2014 WL 12591736
(W.D. Tex. Oct. 22, 2014) ...................................................... 29

*Turbeville v. Fin. Indus. Regul. Auth.*,
874 F.3d 1268 (11th Cir. 2017) ............................................ 28

*U.S. Bank Nat. Ass'n v. Barclays Bank PLC*,
No. 11-9199, 2013 WL 1180414 (S.D.N.Y. Mar. 12, 2013) ......... *passim*

*Williams v. Chatman*,
510 F.3d 1290 (11th Cir. 2007) ............................................ 23

**Statutes**

15 U.S.C. § 78aa ......................................................................... 28

28 U.S.C. § 636(b)(1)(A) ............................................................ 52

28 U.S.C. § 1331 .................................................................. 25, 28

28 U.S.C. § 1332(a) .................................................................... 33

28 U.S.C. § 1332(a)(2) ................................................................ 32

28 U.S.C. § 1332(c)(1) ................................................................ 31

**Other Authorities**

*Agreement*, Black's Law Dictionary (11th ed. 2019) ......................... 38, 41

31A Am. Jur. 2d Expert and Opinion Evidence § 294 (2018) ............... 41

Black's Law Dictionary 1243 (9th ed. 2009) ............................. 35

# TABLE OF CITATIONS
## (Continued)

*Contact*, MERRIAM WEBSTER DICTIONARY,
  https://www.merriam-webster.com/dictionary/contact (last
  visited April 7, 2024).........................................................................43

*Develop*, MERRIAM WEBSTER DICTIONARY,
  https://www.merriam-webster.com/dictionary/develop
  (last visited April 7, 2024) ..............................................................43

*Due*, Black's Law Dictionary (11th ed. 2019) ........................................36

Fed. R. Civ. P. 56(a)................................................................................48

Fed. R. Civ. P. 60(b)(4) ..................................................................1, 2, 4

*Introduced*, MERRIAM WEBSTER DICTIONARY,
  https://www.merriam-webster.com/dictionary/introduced
  (last visited April 7, 2024) ..............................................................43

Merriam– Webster's Collegiate Dictionary 2003 (11th ed.
  2003)...............................................................................................35

*Payable*, Black's Law Dictionary (11th ed. 2019) ..................................36

*Pursued*, MERRIAM WEBSTER DICTIONARY,
  https://www.merriam-webster.com/dictionary/pursued
  (last visited April 7, 2024) ..............................................................44

# STATEMENT OF JURISDICTION

Delclaux appeals the district court's grant of final summary judgment in favor of AST on Delclaux's breach of contract counterclaim, based on its lack of subject matter jurisdiction and on the merits. On February 28, 2023, the district court entered summary judgment for AST, adopting the magistrate judge's December 12, 2022 report and recommendation. In the same order, the district court denied summary judgment on AST's pending claim against Delclaux, citing disputed factual issues, and entered a paperless order denying Delclaux's motion for leave to amend its counterclaim. On March 29, 2023, Delclaux timely appealed, which this Court docketed as Appeal No. 23-10996. Due to the pendency of AST's claim against Delclaux, Delclaux's initial appeal was voluntarily dismissed for lack of finality.

After the parties resolved AST's claim by settlement, securing finality, on June 9, 2023, Delclaux timely appealed, citing the orders on appeal and Delclaux's pending motion for relief from the final judgment under Federal Rule of Civil Procedure 60(b)(4) based on the district court's lack of subject matter jurisdiction at the time AST filed the underlying action. On February 23, 2024, the district court denied

Delclaux's Rule 60(b)(4) motion, finding diversity jurisdiction does not exist but that federal question jurisdiction exists over this state-law breach of contract dispute. Because the district court was without authority to act for lack of subject matter jurisdiction, the final judgment entered, which is the subject of this appeal, should be set aside as void and this cause remanded with directions to be dismissed for lack of jurisdiction. On April 2, 2024, Delclaux amended its notice of appeal, citing its June 9, 2023 notice and the listed rulings.[1]

## STATEMENT OF THE ISSUES

I. Whether the district court lacked subject matter jurisdiction over this state-law breach of contract dispute entirely such that the summary judgment entered in favor of AST on Delclaux's counterclaim for breach of contract, and corresponding final judgment, are void?

II. Assuming jurisdiction, whether the magistrate judge erred in

---

[1] On April 8, 2024, the Court docketed Delclaux's amended notice of appeal as a separate appeal in Case No. 24-11024. Because both appeals concern the same legal rulings and issues asserted in Delclaux's June 9, 2023 notice of appeal, beginning with the Court's lack of subject matter jurisdiction, Delclaux files this brief in Case Nos. 23-11985 and 24-11024, and will move to consolidate these appeals for judicial efficiency.

recommending the district court to grant AST's motion for summary judgment (as opposed to Delclaux's competing motion seeking the same relief) on Delclaux's counterclaim for breach of contract?

III. Assuming jurisdiction, whether the district court erred in summarily adopting the magistrate judge's recommendation over Delclaux's well-taken objections?

## STATEMENT OF THE CASE AND FACTS

## I. STATEMENT OF THE CASE.

This appeal arises from the district court's adoption of the magistrate judge's report and recommendation on the parties' competing summary-judgment motions on state-law breach of contract claims. In entering summary judgment for AST on Delclaux's counterclaim, the district court blessed the serial errors of the magistrate judge, ignoring the plain language of the relevant agreement, adopting AST's interpretation, and protecting AST from its contractual obligations by manufacturing a condition precedent for fees owed to Delclaux absent from the contract itself.

Upon timely appeal to this Court, which this Court docketed as

Appeal No. 23-10996, AST's defective pleading triggered a jurisdictional inquiry as to whether the Court properly had diversity jurisdiction, as AST claimed in its Complaint. Specifically, this Court asked the parties to address "whether the relevant pleadings sufficiently alleged citizenship of the parties so as to invoke the district court's diversity jurisdiction in the first instance." The Court also questioned whether Delclaux's appeal from judgment as to the amended counterclaim was final or immediately appealable, due to the pendency of AST's claim in the district court.

After dismissing its appeal for lack of finality, the parties resolved AST's claim by settlement. During this time in the district court, Delclaux learned that AST improperly had invoked the court's diversity jurisdiction in representing (and pleading) itself as a corporation, despite being a seven-member LLC, including citizens of foreign states. Delclaux being a Spanish corporation, with its principal place of business in Spain, it became immediately apparent that this dispute never belonged in federal court. Delclaux promptly moved for relief from the final judgment, under Federal Rule of Civil Procedure 60(b)(4), citing the district court's lack of subject matter jurisdiction in the first

instance.

When the district court's lack of subject matter jurisdiction was confirmed by Delclaux's motion for relief from the final judgment, the court committed reversible error in adopting AST's manufactured federal question jurisdiction.[2] On review, the district court's ruling is entitled to no deference, and the Court should find jurisdiction absent, which requires that the final judgment be set aside and this action dismissed entirely. If the Court finds jurisdiction, the district court's adoption of the magistrate judge's report and recommendation for entry of summary judgment on Delclaux's counterclaim in favor of AST was improper. This appeal addresses each question in turn.

## II.    STATEMENT OF THE FACTS.

### A.    AST, Delclaux, and LionTree Advisors LLC.

Eager to obtain investments for its company, AST hired Delclaux to find it a registered broker dealer to find investors for its business. (R:70:2). After Delclaux found investment bank, LionTree Advisors LLC

---

[2] Although the Court's subject matter jurisdiction is based on the same Complaint as in Case No. 23-10996, as of the filing of this brief, the Court has not yet issued a jurisdictional question to assure its subject matter jurisdiction.

(LionTree), AST hired LionTree to perform that function. (R:70:2). AST and LionTree, and AST and Delclaux, each executed agreements to memorialize the parties' respective business relationships. (R:70:2). In the LionTree Agreement, AST agreed to hire LionTree as AST's "exclusive financial advisor in connection with any possible Transaction(s) involving [AST]." (R:70-4). AST agreed to pay LionTree and Delclaux a percentage fee at the closing of any financing transaction during the term of the LionTree Agreement and its post-termination (tail) periods. (R:70:2–3). Specifically, AST agreed (i) to pay to LionTree fees equal to 4.25% of AST's "gross proceeds" from any Transaction, defined as a "Fee," and (ii) to pay to Delclaux fees equal to 17.65% of any Fee "due or payable" to LionTree. (R:76, 70-4).

To memorialize Delclaux's fees, AST and Delclaux executed a Finder's Fee Agreement, tying fees owed to Delclaux to the LionTree Agreement. (R:127). Section 2b the Finder's Fee Agreement provides, in pertinent part:

> 2. Compensation to Finder.
> [...]
>
> b. As compensation for its services hereunder, Finder shall receive an additional fee which will be calculated as the investment banking fees which become payable to LTA

[LionTree] at the closing of a Financing multiplied by 17.65 percent (17.65%) (the "LTA Engagement Fee"). If no amounts become due or payable to LTA in connection with a Financing and the LTA agreement is terminated, Finder will not be entitled to receive the LTA Engagement Fee.

(R:1-1:3).

Section II of the LionTree Agreement provided for certain tail periods after the termination of the agreement, during which LionTree— and thus Delclaux—would continue to be owed fees for transactions closed during that cool-down period. (R:127). The first cool-down period (the First Tail) was to last for 180 days from the end of the Term (i.e., through September 10, 2019), and entitles LionTree to Fees when AST enters into an "agreement with any third party" that subsequently results in a Transaction." (R:17-1:3, 127:3–4). Specifically, the First Tail states:

If at any time prior to 180 days following the end of the Term, the Company enters into an agreement with any third party that subsequently results in a Transaction, or a Transaction is consummated, then the Company will pay LionTree the applicable Fee(s) specified above in cash promptly upon the closing of such Transactions.

(R:17-1:3).

The second cool-down period (the Second Tail), begins 180 days after the end of the Term and ends six months later (i.e., from September

11, 2019 to March 14, 2020). (R:17-1:3). The Second Tail entitles LionTree to Fees if during the Second Tail Period "a Transaction is consummated with this third party," i.e., one "introduced" or with which "contact was developed or pursued" during the Term. (R:17-1:3, 127:4). The Second Tail provides:

> If, at any time on or after 180 days from the end of the Term and prior to the expiration of 12 months following the end of the Term, the Company enters into an agreement with a third party that was introduced by the Company or LionTree, or where contact was developed or pursued by the Company or LionTree, during the Term of the Agreement and that subsequently results in a Transaction, or a Transaction is consummated with this third party, then the Company will pay LionTree the applicable Fee(s) specified above in cash promptly upon the closing of such Transaction.

(R:17-1:3).

The LionTree Agreement also provided for a post-termination right of first refusal (ROFR), to represent AST as to any future Transactions and a corresponding fee "based on the prevailing marking for similar services charge by global full service banking firms." (R:127:5). The ROFR states:

> Notwithstanding the foregoing, should the Company pursue any additional Transaction after the initial Transaction, LionTree shall be entitled (but not obligated) to represent the Company and shall be entitled to an additional fee in addition to the Fees, which additional fee shall be mutually agreed

upon by LionTree and the Company, shall be based on the prevailing market for similar services for global full service investment banking firms, and shall be no less than the fee payable to any other financial advisor to the Company with respect to such Transaction.

(R:17-1:3, 76:10).

LionTree raised $10 million from Cisneros Group for AST and, at the closing of that financing transaction, AST paid the earned fees under the respective agreements to Delclaux and to LionTree. (R:70:5). Specifically, AST paid LionTree $425,000 (4.25% of the $10 million) and $75,000 to Delclaux (17.65% of $425,000). (R:127:3). LionTree then worked diligently to support AST's continued fundraising efforts, including (a) contacting about 50 potential investors, (b) facilitating in-person meetings and follow ups, (c) drafting outreach scripts, (d) crafting and refining financial models, and (e) preparing marketing materials. (R:127:3).

## B. AST Terminates the LionTree Agreement But Keeps Closing Transactions.

Effective March 14, 2019, AST terminated the LionTree Agreement and immediately hired a new investment bank, Barclays Bank, to replace LionTree and further raise money for them. (R:70:5). AST completed financing transactions during the two tail periods and

ROFR of the LionTree Agreement, raising $527.4 million. (R:76, 127:2). However, despite having raised millions of dollars, AST refused to pay a penny of the fees earned on those transactions to Delclaux or LionTree. (R:76, 127:2).

After LionTree's termination, the tail periods began to run and AST continued to close transactions. During the First Tail, AST closed the following transactions:

- On June 26, 2018, AST and Vodafone Group PLC (Vodafone) signed an agreement that later resulted in a Transaction with yielded $25 million to AST. (R:76:4, 11, 127:3) Upon closing, a Fee of $25 million was payable to LionTree and, thus, a fee of $187,531.25 to Delclaux. (R:76:4, 127:3);

- On May 2, 2019, AST and Rakuten, Inc. (Rakuten) signed an agreement that later resulted in a Transaction which yielded $78.5 million to AST. (R:76:7, 127:4) Upon closing, a Fee of $3,336,250 was payable to LionTree and, thus, a fee of $588,848.13 to Delclaux. (R:76:7, 127:4);

- On July 10, 2019, AST and American Tower LLC (American Tower) signed an agreement that later resulted in a Transaction

which yielded $6 million to AST. (R:76:7, 127:4). Upon closing, a Fee of $255,000 was payable to LionTree and, thus, a fee of $45,007.50 to Delclaux. (R:76:7, 127:4); and

- On August 15, 2019, AST and Samsung Next Fund, LLC (Samsung) signed an agreement that later resulted in a Transaction which yielded $1 million to AST. (R:76:8, 127:4). Upon closing, a Fee of $42,500 was payable to LionTree and, thus, a fee of $7,501.25 to Delclaux. (R:76:8, 127:4).

During the second tail, AST closed the following transactions:

- On January 10, 2018, LionTree took action to bring Samsung into contact with AST, and a Transaction with Samsung totaling $1 million closed on February 26, 2020 (R:76:8, 127:4–5). This Transaction entitled Delclaux to a $7,501.25 fee (R:76:8, 127:5);

- On June 26, 2018, LionTree took action to bring Vodafone into contact with AST, and a Transaction with Vodafone totaling $25 million closed on October 16, 2019, (R:76:8, 127:4–5). This Transaction entitled Delclaux to a $187,531.25 fee (R:76:8, 127:4–5); and

- "Promptly" after March 4, 2019, AST took action to get into contact with Rakuten, through its subsidiary, Altiostar, and a Transaction with Rakuten totaling $78.5 million closed on February 4, 2020. (R:76:8, 127:4–5). This Transaction entitled Delclaux to a $588,848.12 fee. (R:76:8, 127:4–5).

During the ROFR, AST failed to offer LionTree the option to represent it as to the Transactions with Vodafone, American Tower, Rakuten, and Samsung, identified above. (R:76:10–11, 127:5). This third avenue also entitled Delclaux to its fees in connection with each transaction after the initial transaction with Cisneros Group. (R:76:10–11, 127:5). After AST terminated the LionTree Agreement, it refused to pay any fees to LionTree or to Delclaux. (R:17:16, 127:2).

### C.  Litigation Ensues.

On August 11, 2020, AST filed a one count breach of contract action against Delclaux, alleging violations of the Finder's Fee Agreement. (R:1). Specifically, AST alleged that Delclaux provided certain services without registering with the Securities and Exchange Commission (SEC) and becoming a member of the Financial Industry Regulatory Authority (FINRA), thus breaching the Finder's Fee Agreement.

(R:1:11–12).[3]

On December 29, 2020, Delclaux filed its Answer and Amended Counterclaim. (R:17). Delclaux explained that it lawfully performed under the Finder's Fees Agreement by introducing AST to LionTree, among other things, and that, pursuant to Section 2 of the Finder's Fee Agreement, AST was obligated to pay Delclaux fees "if [AST] raised money from certain entities within a one year tail period of AST's termination of its agreement with LionTree." (R:17). In the Amended Counterclaim, Delclaux brought a single breach of contract claim against AST, under Florida law, for AST's failure to pay Delclaux its fees, which were also owed under the LionTree Agreement for the investment transactions involving AST that closed during the tail periods and ROFR. (R:17). Specifically, Delclaux alleged AST failed to pay Delclaux its fees for transactions AST entered into with Vodafone, Rakuten, American Tower, and Samsung. (R:76 ¶¶ 24–25, 26–27, 28–29, 30–31).

---

[3] AST's claim was eventually resolved through AST's acceptance of Delclaux's proposal for settlement on April 28, 2023.

### D.    The New Providence Transaction.

Despite Delclaux's pending claim against AST for non-payment of fees due Delclaux under the Finder's Fee Agreement, on April 6, 2021, AST closed a new transaction with New Providence Acquisition Corp. (New Providence). (R:129:3). In this transaction, AST raised $416.9 million (the New Providence Transaction). (R:129:3). Upon learning of the New Providence Transaction, Delclaux promptly sought discovery from AST related to it, expressly telling AST it would seek damages related to AST's refusal to pay Delclaux its fees from the closing of the new transaction. (R:70-5; 72-11:70, 72, 159–50, 208–209; 72-12:90–91, 211–215, 216).

### E.    The Competing Summary Judgment Motions.

The parties filed cross-motions for summary judgment on each other's breach of contract claims (R:70, 74, 92). Delclaux argued it was entitled to summary judgment in its favor on its counterclaim and AST's breach of contract claim. (R:70). Delclaux asserted summary judgment was proper because (i) it earned its fees under the Finder's Fee Agreement by acting as a finder, which did not require Delclaux to register as a broker; (ii) AST owes Delclaux fees pursuant to the tail periods and ROFR because AST entered into agreements with certain

non-parties that resulted in investment transactions; (iii) AST owes Delclaux fees pursuant to the tail periods because, during the term of the LionTree Agreement, AST and/or LionTree contacted or attempted to contact non-parties who invested in AST before the end of the tail period; (iv) AST owes Delclaux fees under the ROFR in the LionTree Agreement because AST raised money from a non-party but failed to offer LionTree its option to earn a fee as a financial advisor on the transaction; and (v) AST owes Delclaux fees because the LionTree Agreement was never properly terminated. (R:70).

AST argued it was entitled to summary judgment on Delclaux's counterclaim because LionTree had not pursued fees from AST, and therefore an alleged unwritten "condition precedent" to Delclaux's recovery of fees under the Finder's Fee Agreement had not been satisfied. (R:74). Alternatively, AST argued the activity identified by Delclaux did not trigger a right to fees. (R:74).

### F. The Magistrate Judge's Report and Recommendation.

On December 12, 2022, the magistrate judge issued a Report and Recommendation (the Report), recommending that the district court deny Delclaux's motion for summary judgment on AST's claim for

disputed issues of fact regarding "whether and to what extent Delclaux may have exceeded the terms of the Finder's Fees Agreement by acting as an unregistered broker-dealer in communications with prospective investors." (R:114:7–9). As to Delclaux's claim for AST's breach of the Finder's Fee Agreement, the magistrate judge recommended the district court to enter summary judgment in AST's favor. (R:114:9–11). Specifically, the magistrate judge ruled that the language of Section 2(b) of the Finder's Fee Agreement clearly set forth that "[t]he predicate for Delclaux's recovery of fees under the Finder's Fee Agreement is an amount first becoming due or payable to LionTree under the LionTree Agreement." (R:114:10). Thus, the magistrate judge found that because the record was void of any evidence that fees were due and payable **to LionTree**, AST was entitled to judgment as a matter on **Delclaux's** independent counterclaim for its fees. (R:114:11). The magistrate judge also recommended that the court find that Delclaux had not properly pled entitlement to recovery as to the New Providence Transaction, which was not properly before the court. (R:114:10 & n.5).

### G. Delclaux's Objections to the Report and Alternative Motion for Leave to Amend Delclaux's Counterclaim.

On January 18, 2023, Delclaux filed its amended objections to the

magistrate's Report. (R:127). Delclaux challenged the magistrate judge's erroneous interpretation of the LionTree Agreement and the Finder's Fee Agreement, raising five specific objections. (R:127:1–20). First, Delclaux explained the magistrate judge misapplied the plain meaning of the terms "payable" and "due" in manufacturing a condition precedent that LionTree pursue its own Fees under the LionTree Agreement before Delclaux could be entitled to its fees. (R:127:9–10). Second, the magistrate erroneously found ambiguity in the LionTree Agreement. (R:127:11–16). Third, Delclaux explained that even if there was ambiguity in the LionTree Agreement, such ambiguity would create a fact question to be resolved by a jury—not on summary judgment. (R:127:16). Fourth, Delclaux objected to the magistrate judge's application of the record evidence to the plain language of the LionTree Agreement and Finder's Fee Agreement, explaining that such analysis requires entry of summary judgment in Delclaux's favor. (R:127:17–19). Fifth, Delclaux objected to the magistrate judge's finding that there was "no mention in the . . . Counterclaim of . . . the language of the [ROFR]," and rejection of Delclaux's damages attributable to the New Providence Transaction. (R:127:20–21).

On January 30, 2023, Delclaux filed its alternative motion for leave to file second amended counterclaim (the Amendment Motion). (R:129). In the Amendment Motion, Delclaux asked the district court to allow amendment of its counterclaim to "bring it into conformity with the record evidence" that had come to light since the expiry of the court's February 21, 2021 deadline for the parties to amend the pleadings. (R:129:6).

## H.   The District Court's Rulings.

On February 27, 2023, the district court entered its order overruling Delclaux's objections and adopting the Report regarding the competing motions for summary judgment (the Adoption Order). (R.136:1). Beyond a general statement of the law and representation that the court conducted a "*de novo* review of the record," the court simply ruled it "agree[d]" with the magistrate judge's reasoning and conclusion that Delclaux's motion for summary judgment be denied and that AST's motion for summary judgment be granted. (R.136:2).[4]

---

[4] In a footnote its Adoption Order, the district court summarily denied the Amendment Motion. (R.136:2 & n.2). The district court made no findings beyond that it did not "find good cause to grant [the] motion at this juncture." (R.136:2 & n.2). The court entered a paperless order to that effect. (R.137).

In accordance with the summary judgment ruling, the district court entered final judgment in favor of AST on Delclaux's counterclaim. (R:138). On April 28, 2023, the parties settled AST's claim against Delclaux, which resulted in the district court's dismissal, with prejudice, of the only pending claim. (R:148, 152).

## I.    The Post-Judgment Motion.

Delclaux initiated an appeal from the final judgment, which this Court docketed as Appeal No. 23-10996. (R:139). The Court issued two jurisdictional questions. First, the Court questioned whether the Summary Judgment Order was final and immediately appealable due to the pendency of AST's complaint in the district court. Second, the Court questioned whether the complaint properly alleged citizenship of the parties to invoke diversity jurisdiction in the first instance. The jurisdictional questions prompted discovery between the parties to flesh out the correct citizenship of the parties. On May 11, 2023, Delclaux moved to voluntarily dismiss its initial appeal for lack of finality, due to the pendency of AST's claim against Delclaux, which this Court granted.

On May 31, 2023, Delclaux moved for relief from the final judgment. (R:153). Delclaux explained that the district court lacked

subject matter jurisdiction because AST had incorrectly treated itself as a corporation and alleged it was a citizen of Delaware, with its principal place of business in Texas. (R:153; 1:11, 15). Because AST in fact had 7 members, some of whom had foreign citizenship, Delclaux explained that AST's failure to allege the citizenship of each of its members was improper. (R:153:5–7). Delclaux explained that because Delclaux is a citizen of Spain, if AST properly pled its jurisdictional allegations, it was clear that there were aliens on both sides of the "v"—destroying diversity jurisdiction. (R:153:6–7).

Delclaux explained that federal question jurisdiction did not exist either. (R:153:7–10). Specifically, Declaux argued that AST's state-law contract claim did not involve a substantial issue of federal law nor was federal question jurisdiction available for AST's claim based on alleged breaches that are agnostic to federal law. (R:153:8). AST opposed the motion, arguing that its breach claim was "wholly dependent" on an alleged violation of federal securities law. (R:157).

On June 9, 2024, Delclaux filed its notice of appeal, citing the district court's rulings on summary judgment, the final judgment, the motion to amend, and the pending motion for relief from final judgment

for lack of subject matter jurisdiction. (R:156). On February 23, 2024, the district court entered its order denying Delclaux's motion for relief from final judgment, finding that although it lacked diversity jurisdiction, AST's state-law claim could supply federal question jurisdiction. (R:162). This appeal follows.

## SUMMARY OF ARGUMENT

When AST filed its one-count complaint asserting a state-law breach of contract claim against Delclaux, it improperly invoked diversity jurisdiction to fix this dispute in federal court. As the litigation progressed, and in response to this Court's prompting on initial appeal, the defects in AST's jurisdictional allegations became apparent. As an LLC with members including foreign citizens, AST never could bring a claim against Delclaux—a *sociedad anónima*, Spanish corporation—based on diversity of citizenship. So when Delclaux moved for relief from the final judgment, void for the district court's utter lack of subject matter jurisdiction, AST pivoted it strategy and convinced the district court to find federal question jurisdiction here. As is clear from AST's complaint, AST's claim does not involve a substantial issue of federal law, such that the federal laws implicated are a "direct and essential"

21

element of AST's claims for relief. Indeed, where AST could have succeeded on its claim by any of the purely contractual "breaches" it pled—entirely agnostic to federal law—it does not follow that this Court's has federal question jurisdiction. In the absence of either diversity or federal question jurisdiction, the only correct result is to vacate the final judgment as void and remand for dismissal of this action for adjudication in state court.

Even if this Court had subject matter jurisdiction, the district court's entry of summary judgment is ripe for reversal. On the merits, the magistrate judge recommended, and the district court adopted and entered, summary judgment on Delclaux's Amended Counterclaim in favor of the wrong party. Because the district court's summary judgment in favor of AST turns entirely on the magistrate judge's incorrect construction of the LionTree Agreement, when this Court credits the plain language of the contract, as New York law requires, and analyzes the undisputed facts, reversal and entry of summary judgment in *Delclaux's favor* is required.

The magistrate judge erred in at least three distinct ways, which the district court accepted. First, by disregarding the plain contractual

language in favor of a self-serving interpretation offered by AST to misinterpret the LionTree Agreement's key terms. Second, by manufacturing ambiguity and relying on improper expert testimony, offered by AST, to limit the scope of the LionTree Agreement and burden LionTree and Delclaux with a causal requirement the parties never contracted for. Third, by resolving any disputed facts if ambiguity was found, when such question is proper for a jury. The district court failed to correct these errors on *de novo* review, as required under federal law, upon Delclaux's timely and specific objections to the magistrate's report and recommendation. If the Court entertains this appeal on the merits, it should reverse the underlying summary judgment and direct summary judgment for Delclaux.

## ARGUMENT

## I. STANDARD OF REVIEW.

*Issue I (subject matter jurisdiction):* This Court reviews *de novo* questions concerning jurisdiction. *Williams v. Chatman*, 510 F.3d 1290, 1293 (11th Cir. 2007). The Court is "obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005); *King v. Cessna*

*Aircraft*, 505 F.3d 1160, 1170 (11th Cir. 2007) ("every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review." (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)).

*Issue II (entry of summary judgment):* This Court reviews a district court's (or a magistrate judge's) ruling on summary judgment *de novo*. *McNamara v. Gov't Emps. Ins. Co.*, 30 F.4th 1055, 1058 n.2 (11th Cir. 2022).

## II. THE FINAL JUDGMENT AND UNDERLYING SUMMARY JUDGMENT ARE VOID FOR THE COURT'S LACK OF SUBJECT MATTER JURISDICTION.

### A. The District Court Lacked Federal Question Jurisdiction at the Time AST Filed This Action.

Because the existence of federal question jurisdiction is tested at the time plaintiff brings its claim, the Court must look to AST's complaint alone to assure its jurisdiction. (R:1). When viewed through the lens that federal law requires, the district court's error in finding federal question jurisdiction is patent. *King*, 505 F.3d at 1170 (Court obligated to review its own jurisdiction as well as the jurisdiction of the lower court, even in the absence of a cross-appeal directed to the issue;

"[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." (internal citations omitted)).

The "arising under" requirement for federal question jurisdiction is satisfied if either (a) federal law creates the right to sue pursuant to a federal claim for relief, or (b) the plaintiff's right to relief depends on the resolution of a substantial issue of federal law. 28 U.S.C. § 1331; *Empire Healthchoice v. McVeigh*, 547 U.S. 677, 698–80 (2006).

Here, as the parties agreed in the district court, AST's Florida-law breach of contract claim was not created by federal law, so category (a) cannot apply. (R:162). Under category (b), for a state law claim to involve a "substantial issue of federal law," the federal law implicated must be a ***direct and essential element*** of the plaintiff's claim for relief. *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 89 (1998) (emphasis added); *Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 517 (11th Cir. 2000). Federal law must be an essential element of the plaintiff's claim and the "federal right or immunity that forms the basis of the claim must be such that the claim will be supported if the federal law is given one construction or effect and defeated if it is given another." *Mobil Oil Corp. v. Coastal*

*Petroleum Co.*, 671 F.2d 419, 422 (11th Cir. 1982). Further, a state-law claim simply referring to a federal law generally or the mere presence of a federal issue in a state-law cause of action does not confer jurisdiction. *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 814 (1986); *Dunlap v. GL Holding Grp., Inc.*, 381 F.3d 1285, 1290 (11th Cir. 2004). Thus, the Supreme Court requires federal courts to look at whether a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress, coined the *Grable* test. *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005)).

In the sole count in AST's complaint that Delclaux breached the Finder's Fee Agreement, AST alleged Delclaux's breach in four independent ways. (R:1). Two ways are entirely agnostic to any federal law and the other two—at best—allege noncompliance with federal law in violation of the parties' contract. (R:1:9). Specifically, AST claimed that Delclaux breached the Finder's Fee Agreement by: (i) "engaging in activity that exceeded the agreed upon scope of its activities under the [Finder's Fee] Agreement," (ii) "not obtaining or maintaining all licenses,

permits, and other authorizations required by applicable laws, rules, or regulations governing Delclaux's activities under the [Finder's Fee] Agreement," (iii) "not acting in compliance with all securities and other laws, rules, and regulations applicable to Delclaux's activities under the [Finder's Fee] Agreement," and (iv) "refusing to return confidential information obtained from AST under the [Finder's Fee] Agreement." (R:1:9). Where AST could have succeeded on its claim with no concern as to federal securities law, (i.e., by subsections (i) and (iv) which assert only contract-based breaches) it cannot be said that federal law is an "essential element of the plaintiff's claim." *Mobil Oil Corp.*, 671 F.2d at 422 (basis of the federal claim must turn fully on the construction or effect of a federal law); *Davis v. Eagle Oil & Gas Co.*, No. 08-CA-107, 2008 WL 11334171, at *4 (W.D. Tex. Oct. 10, 2008) (claim for breach of contract that included violations of federal law, among others, insufficient to confer federal-question jurisdiction because the claim could be resolved solely on the basis of other alleged contractual breaches). Accordingly, AST cannot meet any of the first three prongs of the *Grable* test; federal issues are not "necessarily raised," "actually disputed," or "substantial" here. (R:1); *see also Grable*, 545 U.S. at 315.

For the same reason, the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, (the Exchange Act) does not provide a basis for federal question jurisdiction.[5] Although it is true that "[i]f a state-law action necessarily depends on a showing that the defendant breached the Exchange Act, then that suit could also fall within § [78aa]'s compass," AST's claim is not so dependent. *Compare Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374, 383 (2016) *with* (R:1:9). Again, the two contract-based breaches in subsections (i) and (iv) are entirely independent of federal law. (R:1:9). The only two breach allegations that even peripherally relate to federal law (i.e, subsections (ii) that Delclaux did not "obtain[] or maintain[] all licenses, permits, and other authorizations required by applicable laws, rules, or regulations governing Delclaux's activities under the [Finder's Fee] Agreement" and (iii) that Delclaux did "not act[] in compliance with all securities and other laws, rules, and regulations applicable to Delclaux's activities under the [Finder's Fee] Agreement" are tied to the sole allegation that

---

[5] This Court applies the same test to "determine whether federal courts have exclusive jurisdiction over matters arising under the Exchange Act as . . . to whether the district courts have original jurisdiction over suits under the general federal-question statute, 28 U.S.C. § 1331." *Turbeville v. Fin. Indus. Regul. Auth.*, 874 F.3d 1268, 1274 (11th Cir. 2017).

"Delclaux had acted beyond the scope of a mere finder and without the requisite license and registrations of a broker-dealer under the [Securities Act] and the rules of the [FINRA]." (R:153:8–9; R:1:1–2, 9). These allegations do not depend on an analysis of disputed or substantial questions of federal law; they turn on a binary assessment of whether Declaux complied with federal law or not. Such binary assessment is insufficient to support federal question jurisdiction. *Dunlap*, 381 F.3d at 1291–93 (reversing summary judgment and remanding case to state court because while complaint claimed breaches of federal law, determinations required by the court would not raise disputed questions of federal law to confer jurisdiction); *Strickler v. Chase Manhattan Mortg. Co.*, No. 14-CA-858, 2014 WL 12591736, at *3 (W.D. Tex. Oct. 22, 2014) (declining federal-question jurisdiction where plaintiff alleged violations of federal regulations requiring only a fact-specific inquiry as to whether the regulations were violated, but not an interpretation as to the regulations).

This is why AST's breach of contract claim properly belonged in state court, where such adjudication would not "disturb any congressionally approved balance of federal and state judicial

responsibilities." *Grable*, 545 U.S. at 314. AST's breach-of-contract claim, which only implicated federal law by indirectly alluding to federal issues, would not disturb any balance between state and federal jurisdictional responsibilities—state courts routinely maintain jurisdiction over these types of breach of contract actions that implicate federal questions. *MDS (Canada) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 843 (11th Cir. 2013), *certified question answered*, 143 So. 3d 881 (Fla. 2014) (finding state-court subject matter jurisdiction over breach of contract claim which implicated federal patent law). Accepting the district court's erroneous ruling, any contract that requires a party to "comply with all laws" would be rightly adjudicated in federal courts, contravening the well-established maxim that federal courts are courts of limited subject-matter jurisdiction. *Id.* ("[i]f we were to conclude that this case about a breach of contract arises under the patent laws," the court would "sweep a number of state-law claims into federal court" upsetting the "congressionally approved balance of federal and state judicial responsibilities").

Having failed to allege its claim in a way that requires interpretation and resolution of a substantial question of federal law,

AST could not rely on federal question jurisdiction to place this dispute properly before the district court.

## B. The District Court Lacked Diversity Jurisdiction at the Time AST Filed This Action.

AST fares no better on an inquiry into potential diversity jurisdiction. Diversity must exist at the time the complaint is filed; changes in citizenship pre-suit or after the complaint is filed do not create or defeat diversity. *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 569–70 (2004). On the one hand, a corporation is a citizen of the state where it is incorporated and the state where it has its principal place of business, meaning it is not subject to diversity jurisdiction in a suit against a citizen of any of its states of citizenship. 28 U.S.C. § 1332(c)(1); *Bel-Bel Int'l v. Cmty. Bank*, 162 F.3d 1101, 1106 (11th Cir. 1998). If the corporation's principal place of business is foreign, it is a citizen of that foreign state as well as any state and foreign state where the corporation is incorporated. § 1332(c)(1). On the other hand, the citizenship of artificial entities other than corporations is shaped by the citizenship of each of their partners or members. *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 381 (2016). An LLC is considered an unincorporated entity even though it may have features like a

corporation, and for diversity, the citizenships of all its members are relevant. *Mallory & Evans Contractors & Eng'rs, LLC v. Tuskegee Univ.*, 663 F.3d 1304, 1305 (11th Cir. 2011).

If an alien (i.e., a citizen of a foreign state) sues an alien, there is no diversity or alienage jurisdiction unless complete diversity otherwise exists. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 580 n.2 (1999); *see, e.g.*, *Grupo Dataflux*, 541 U.S. at 569 (finding no diversity jurisdiction where the plaintiff was a partnership with two Mexican partners, one Delaware partner, and one Texas partner, and the defendant was a Mexican corporation); *Caron v. NCL (Bah.), Ltd.*, 910 F.3d 1359, 1365 (11th Cir. 2018) (finding no diversity jurisdiction where the plaintiff was a Canadian citizen, and the defendant was a Bermuda company with its principal place of business in Florida because both were considered aliens, and § 1332(a)(2) does not support the exercise of jurisdiction in that situation); *Les Pecheries Norref Quebec Inc. v. Sea Delight Grp., LLC*, No. 21-CV-62102, 2022 WL 673764, at *4 (S.D. Fla. Feb. 16, 2022) (recommending that the case be dismissed for lack of subject-matter jurisdiction because both the defendant LLC and the plaintiff LLC had foreign members that defeated diversity jurisdiction),

*report and recommendation adopted*, No. 21-CV-62102, 2022 WL 673739 (S.D. Fla. Mar. 7, 2022).

Here, at the time of filing, there were aliens on both sides of this case, destroying diversity. On the one hand, Delclaux was (and is) a *sociedad anónima*, a Spanish corporation, with its principal place of business in Spain. (R:1) On the other, AST (was) and is an LLC with members that are citizens of Singapore, England and Wales, Guernsey, and the Dominican Republic. (R:139). Accordingly, because there were aliens on both sides of the action, § 1332(a) did not support subject matter jurisdiction here. *See IGY Ocean Bay Props. Ltd. v. Ocean Bay Props. I Ltd.*, 534 F. Supp. 2d 446, 448-49 (S.D.N.Y. 2008) ("[D]ual citizenship is not an either/or proposition in which the parties on either side of the dispute (or the Court for that matter) are given a choice to decide which citizenship applies in any particular case and thus to determine the existence of diversity jurisdiction based on that one citizenship. Rather, for this Court to exercise jurisdiction over a matter, the diversity test must be satisfied under both citizenships.").

For its part, the district court correctly recognized that not even an arguable basis for diversity jurisdiction is found here. (R:162:9). It is

beyond dispute that, on this point, the district court reached the right result.With both federal question and diversity subject matter jurisdiction lacking, the district court lacked power to act. *Dunlap*, 381 F.3d at 1297. Accordingly, this Court should reverse the summary judgment in AST's favor and remand with instructions to remand this cause for state court adjudication. *Id.*

## III. DELCLAUX—NOT AST—WAS ENTITLED TO SUMMARY JUDGMENT ON DELCLAUX'S COUNTERCLAIM FOR BREACH OF CONTRACT.

### A. The Magistrate Judge Disregarded the Plain Language of the LionTree Agreement Entitling Delclaux to its Fees and Incorrectly Interpreted Key Terms.

First, the magistrate judge incorrectly ignored the plain meaning of key terms in the LionTree Agreement that triggered Delclaux's entitlement to fees, and instead accepted AST's interpretation of such terms. (R:114). Because no ambiguity was present, the door never opened for competing interpretations that conflict with the terms' plain meaning.

If "intent is discernable from the plain meaning of the language of the contract, there is no need to look further." *CBRE Inc. v. Pace Gallery of New York Inc.*, No. 17-02452, 2021 WL 1198644, at *6 (S.D.N.Y. Mar.

30, 2021). Thus, "[w]hen a contract term is undefined, a court should look to the plain meaning of the language to ascertain whether there is ambiguity" and "not stretch words to create an ambiguity when their ordinary meaning leaves no room for such doubt." *Arthur the Dog v. U.S. Merch. Inc.*, No. 05-0958, 2007 WL 2493427, at *6 (E.D.N.Y. Aug. 29, 2007). Where the plain meaning of the word "agreement" explains its use, there was no room for the competing meaning offered by AST.

Although Fees must be "due" or "payable" under the LionTree Agreement for Delclaux to recover its fees, the plain meaning of those terms supports that AST's payment obligation to Delclaux and LionTree was triggered by the closing of transactions—not by LionTree's pursuit of its own fees. (R:70-3 at 4 (§2(b)); 70-4:3–4). In its Objections to the Report (R:127:17), Delclaux explained that applying the plain meaning of "payable" and "due," fees are "payable" and "due" upon the closing of a Transaction without further action by LionTree. Per one New York court:

> A leading dictionary defines "payable" as "that may, can, or must be paid." Merriam– Webster's Collegiate Dictionary 2003 (11th ed. 2003). Similarly, Black's Law Dictionary defines "payable" as "([o]f a sum of money or a negotiable instrument) that is to be paid." Black's Law Dictionary 1243

(9th ed. 2009). Black's also notes that "[a]n amount may be payable without being due."

*U.S. Bank Nat. Ass'n v. Barclays Bank PLC*, No. 11-9199, 2013 WL 1180414, at *5-6 (S.D.N.Y. Mar. 12, 2013); *Payable*, Black's Law Dictionary (11th ed. 2019). Courts have found "payable" and "due" can be interchangeable. *S. Cal. Fed. Sav. & Loan Ass'n v. Fugazy Exp. Inc.*, No. 85 CIV. 2723, 1988 WL 5347, at *2 (S.D.N.Y. Jan. 15, 1988). The dictionary definition of "due" is "[o]wing or payable; constituting a debt." *Due*, Black's Law Dictionary (11th ed. 2019).

That plain meaning aligns with the contractual provisions in the Finders' Fee and LionTree Agreements. Section 3 of the Finders' Fee Agreement directs the "payment" of fees to Delclaux "shall be made by AST at the closing of a Financing," without further requirements. (R:70-3:4). The LionTree Agreement states that a Transaction Fee is "payable promptly at the closing of a Transaction." (R:70-4:4) The First and Second Tails both include similar language, stating that AST "will pay LionTree the applicable Fee(s) . . . promptly upon closing of such Transaction." (R:70-4:4). So, LionTree's Fees are "payable" and "due" upon "the closing of a Transaction," not when it pursues Fees, and the same is true for Delclaux's fees. Thus, upon the closing of a Transaction,

no further action is required of either LionTree or Declaux for a fee to be due or payable.

This is why the magistrate judge should have rejected AST's contention that "a necessary condition precedent to Delclaux's recovery of fees under the [Finders' Fee Agreement]" is that LionTree has "pursued its own fees from AST under the LionTree Agreement." (R:126:10). Had AST wanted to include that requirement, it should have done so explicitly in contracting. *Fugazy Exp. Inc.*, 1988 WL 5347, at *2. And "in the absence of unambiguous language, a condition [precedent] will not be read into the agreement." *CBRE Inc.*, 2021 WL 1198644, at *6 (internal citation omitted).

**B. The Magistrate Judge Incorrectly Assumed the LionTree Agreement Was Ambiguous and Considered Improper Extrinsic Evidence.**

*i. The term "agreement" in the First Tail is unambiguous.*

Next, the magistrate judge incorrectly assumed the LionTree Agreement was ambiguous, ignoring the plain language of the contract. As a result, in interpreting the First Tail, the magistrate judge incorrectly considered extrinsic expert testimony to accept AST's argument that the term "agreement" meant a "binding contract setting

forth the terms and conditions of an investment transaction," and not its plain meaning, i.e., other agreements such as a non-disclosure agreement or engagement letter with other financial advisors and investment banks. (R:70-4:3–4, 127:12–13).

First, the magistrate judge ignored the plain meaning of "agreement." Black's Law Dictionary defines the term as "[a] mutual understanding between two or more persons about their relative rights and duties regarding past or future performances; a manifestation of mutual assent by two or more persons." *Agreement*, Black's Law Dictionary (11th ed. 2019); *Barclays Bank PLC*, 2013 WL 1180414, at *5–6. "[T]he term 'agreement' would include any arrangement between two or more persons intended to affect their relations . . . to each other." *Agreement*, Black's Law Dictionary. So, in the First Tail, "agreement" means "any arrangement" or "mutual understanding with two or more persons" which later "results [directly or indirectly] in a Transaction." (R:70-4:4, 127:12–13). The First Tail does not qualify the term "agreement";[6] had AST wanted to, it would "have made that intention

---

[6] Indeed, "Commercial agreements" may be one type of "agreement" excluded by the LionTree Agreement (***elsewhere*** than the First or Second Tails), which states they are "outside the scope." (R:70-4:3).

crystal clear." *Fugazy Exp. Inc.*, 1988 WL 5347, at *2. Thus, under applicable New York law, "agreement" was unambiguous and extrinsic evidence was not needed to alter its plain meaning. *Arthur the Dog*, 2007 WL 2493427, at *6.

The LionTree Agreement itself is ample evidence of the parties' broad intent as to the meaning of "agreement" in the First and Second Tails. *Barclays Bank*, 2013 WL 1180414, at *5–6 ("[t]he best evidence of what parties to a written agreement intend is what they say in their writing"). The first sentence of the LionTree Agreement discusses a "letter agreement . . . to act as . . . financial advisor in connection with any possible Transaction(s)," and Section VII(a) spells out LionTree's exclusivity, two kinds of "agreements." (R:70-4:3, 6). The LionTree Agreement recognizes an NDA as another type of "agreement" in Section VIII, where AST "agree[d] not to disclose th[e LionTree] Agreement, the contents [t]hereof, or the activities of LionTree pursuant [t]hereto to any other party without [its] prior approval." (R:70-4:8). And the same goes for transaction agreements and agreements as to Transaction Fees, non-marketable securities, and reimbursements, (Section II); shared information (Section III); publicity (Section V); indemnification (Section

VI and Exhibit A); "subscription" or other "agreements . . . in any other format" (Section VII(a)); LionTree's independent-contractor status (Section VIII); and other miscellaneous provisions (Section IX). (R:70-4:3–14). Further, at Section II, "Transaction Agreement" is defined as an "agreement with respect to a Transaction" (R:70-4:3), which plainly would encompass not only AST's strict definition of a transaction, but also any letters of intent, memoranda of understanding and other agreements which may not "respect . . . a transaction" but could "subsequently result[] a Transaction," "whether effected directly or indirectly"—as provided by the definition of Transaction—as to trigger the First Tail:

> If at any time prior to 180 days following the end of the Term, the Company enters into an agreement with any third party that subsequently results in a Transaction, or a Transaction is consummated, then the Company will pay LionTree the applicable Fee(s) specified above in cash promptly upon the closing of such Transactions.

(R:17-1:3).

This is why the definition Delclaux proposed in the district court—and not the definition AST advanced and the court accepted—makes sense. "Agreement" is not limited to a "binding contract setting forth the terms of an investment transaction"—consistent with the plain language

of the contract, "agreement" broadly captures any form of arrangement reached by AST with a third party. *Agreement*, Black's Law Dictionary; *Barclays Bank PLC*, 2013 WL 1180414, at *5–6.

For all these reasons, the magistrate judge's consideration of testimony by AST's expert, Jim Timmins, was improper. *E.g., Richards v. Direct Energy Servs. LLC*, 915 F.3d 88 (2d Cir. 2019) (improper to consider expert testimony to interpret unambiguous contract) (citing 31A Am. Jur. 2d Expert and Opinion Evidence § 294 (2018) ("unless the words or phrases in a contract . . . are terms of art, expert testimony regarding the meanings of contractual provisions is irrelevant and hence inadmissible")). AST's expert testified that the First Tail "could [not] cover transactions where absolutely no part of the process with the investor had commenced until after the term ended" because that "would entitle the investment bank to a fee for something it had nothing to do with." (R:74:21 (quoting R:72)). The plain language, again, of the First Tail, proves this testimony false. The First Tail does not require LionTree to do anything during the set time period to earn a fee; it is consistent with LionTree's exclusivity guaranteed under the contract— which New York courts have recognized as "industry practice." *Deutsche*

*Bank Secs., Inc v. Rhodes*, 578 F. Supp. 2d 652, 667–69 (S.D.N.Y. 2008) ("it is not uncommon in the investment banking field for investment banks to be contractually entitled to fees even when they do not arrange or facilitate the transactions"). Where the magistrate judge was not empowered to consider expert testimony, it certainly erred in accepting extrinsic testimony that modifies the contractual language at issue.

In sum, the magistrate judge improperly rewrote the First Tail by wrongly limiting the term "agreement" despite a lack of ambiguity. That was error the district court was required to correct.

> ### ii. The terms "introduced," "contact," and "developed or pursued" in the Second Tail are unambiguous and untethered to a "causal" requirement.

As to the Second Tail, the magistrate judge incorrectly held that the terms "introduction," "contact," and "developed or pursued" were ambiguous—again, ignoring the plain language of the contract and inappropriately crediting the extrinsic evidence of AST's expert testimony. (R:70-4:3–4). In so doing, the magistrate judge improperly accepted AST's expert's read of a causation element into the LionTree Agreement, crediting an "introduction," "contact," "develop[ment]," or "purs[uit]" only if it "contributes in some way to an investment (or

acquisition) eventually being closed" or "causally contribute[s] to a Transaction." (*Compare* R:70-4:3–4 *with* R:114:14; *see also* R:127:15).

Beginning with the plain language, as the magistrate judge was required to do, the Second Tail states:

> If, at any time on or after 180 days from the end of the Term and prior to the expiration of 12 months following the end of the Term, the Company enters into an agreement with a third party that was ***introduced*** by the Company or LionTree, or where ***contact*** was ***developed or pursued*** by the Company or LionTree, during the Term of the Agreement and that subsequently results in a Transaction, or a Transaction is consummated with this third party, then the Company will pay LionTree the applicable Fee(s) specified above in cash promptly upon the closing of such Transaction.

(R:17-1:3) (emphasis added).

The plain dictionary meaning of "introduced" is "to cause to be acquainted." *Introduced*, MERRIAM WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/introduced (last visited April 7, 2024). "Contact" means "to bring into contact" or "to get in communication with." *Contact*, MERRIAM WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/contact (last visited April 7, 2024). "Develop" means "to work out the possibilities of" or "to expand by a process of growth." *Develop*, MERRIAM WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/develop (last visited April

7, 2024). And "pursued" means "to engage in" and to "follow up or proceed with." *Pursued*, Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/pursued (last visited April 7, 2024). These terms are unambiguous and applying their plain meaning in the context of the LionTree Agreement does not create any ambiguity either.

Looking to the LionTree Agreement, the Second Tail entitles LionTree to a Fee if (a) AST or LionTree either caused AST and a third party "to be acquainted" with one another *or* "engaged in" an effort to "bring" that third party and AST "into contact" or "communication" during the Term that "subsequently results in a Transaction," or (b) a Transaction is consummated with that third party during the Second Tail period. *See Barclays Bank PLC*, 2013 WL 1180414, at *5–6.

Once again, the court's disregard of the plain language in favor of AST's self-serving interpretation of the Second Tail was in error. *See Arthur the Dog*, 2007 WL 2493427, at *6 ("Courts cannot stretch words to create an ambiguity when their ordinary meaning leaves no room for such doubt."). Where the Second Tail does not contemplate a causation element, the magistrate judge's addition of the requirement that an

introduction, contact, development, or pursuit "causally contribute to a Transaction" was improper. *See id.*

## C. Even if the LionTree Agreement Had Ambiguity, the Meaning of its Terms Presented Fact Questions for a Jury.

Despite that the language of the LionTree Agreement is clear and unambiguous, if any ambiguity was found, the magistrate judge incorrectly disregarded disputed factual issues and entered summary judgment in AST's favor.

New York law recognizes that where the language of a contract is susceptible to different interpretations, and the "determination of the intent of the parties depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence, then such determination is to be made by the jury." *Nationstar Mortg. LLC v. Goeke*, 57 N.Y.S.3d 223, 227 (2017). But rather than adhere to this obligation, the magistrate judge improperly resolved disputed facts to accept AST's proffered interpretation of the key contractual language.

Specifically, the magistrate judge incorrectly concluded that "Delclaux fails to support with record evidence its contentions that the

First Tail specifically contemplated the execution of [NDAs] or that the Second Tail contemplates the contacts Delclaux describes." (R:114:12). Not only did Delclaux present that the best evidence of the parties' intent as to the LionTree Agreement was the agreement itself, Point III.B.i, *supra*, Delclaux submitted a declaration by Ehren Stenzler, President of LionTree, attaching an email reflecting LionTree's interpretation of the Second Tail in the same way Delclaux advanced. (R:70-18:28). There, Stenzler explained to AST that LionTree was entitled to its Fees based on the plain language of the Second Tail of the LionTree Agreement. (R:70-18:28). In further support, Delclaux submitted a supplemental declaration affirming its intent with respect to the LionTree Agreement, including that Fees due Delclaux would be triggered "at the closing of a qualifying Transaction" and not on a condition precedent that LionTree "must pursue or demand payment of the Fee from AST in order for the Fee to be "due" or "payable." (R:127-2:3). Delclaux also attested its understanding of Section 3(A) of the Finder's Fee Agreement, "that Delclaux would be paid by the [LionTree] Engagement Fee at the closing of qualifying Financing" not by any other requirement, including "any action by Delclaux or LionTree." (R:127-2:2).

Because the key terms of the LionTree Agreement and Finder's Fee Agreement were fully disputed, the magistrate judge improperly disregarded the factual dispute and resolved the inquiry by crediting only AST's extrinsic evidence. *Nationstar Mortg. LLC*, 57 N.Y.S.3d at 227. Thus, if any ambiguity existed, AST was not entitled to summary judgment—such questions were appropriate for a jury.

### D. The Magistrate Judge Incorrectly Recommended Denial of Delclaux's Motion for Summary Judgment on its Counterclaim.

Having failed at the first step to recognize a lack of ambiguity in the LionTree Agreement, the magistrate judge misapprehended the record evidence Delclaux presented that required entry of summary judgment in Delclaux's favor on the Amended Counterclaim under the LionTree Agreement. (R:70; 114:11–15; 128:17–21).

#### i. *Undisputed Evidence Proves AST Breached the LionTree Agreement by Failing to Pay Delclaux for Fees Owed Under the First Tail.*

As explained above, Delclaux's entitlement to fees under the LionTree Agreement was triggered by AST's entry into "agreement" with third parties, "whether effected directly or indirectly" that "subsequently resulted in a Transaction," by September 10, 2019. Point III.B.i, *supra*. The facts before the magistrate judge showing AST's breaches were

undisputed. When the LionTree Agreement is correctly construed, summary judgment in favor of Delclaux on the Amended Counterclaim is required.

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the district court of the basis for its motion and identifying the portions of the pleadings, depositions, answers to interrogatories, and admissions on file, which demonstrate the absence of a genuine issue of material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). Delclaux satisfied that standard here.

AST did not dispute that it entered into each of the four agreements Delclaux identified with Vodafone (June 26, 2018) (R:76:4, 7 (¶¶24–25), 127:3; 81:4 ("Undisputed.")); 72-13:81), Rakuten (May 2, 2019) (R:76:7 (¶¶28–29); 81:4 ("Undisputed.")); 127:4), American Tower (July 10, 2019) (R:76:7 (¶¶26–27); 81:4 ("Undisputed.")); 127:4), and Samsung (August 15, 2019) (R:76:8 (¶¶30–31); 81:4("Undisputed."));

127:4), all during the First Tail. Similarly, it was undisputed that, because of each of these agreements, AST and each investor performed due diligence which led to "consummated" Transactions. (R:72-12:27–29 (explaining NDA was required for access to data room containing "[e]verything an investor would want to see from a diligence standpoint prior to making its investment decision"), 70-16 (undisputed Vodaphone, Rakuten, American Tower, and Samsung only accessed data room to perform due diligence for Transactions after signing their respective agreements); 76:8 (¶¶32–33)). Finally, AST did not dispute that transactions with Vodafone, Rakuten, American Tower, and Samsung indeed closed. (*Compare* R:76:7–8 (¶¶24–31) *with* R:81:4).

As all facts concerning the agreements during the First Tail were undisputed, the only barrier to summary judgment was the magistrate judge's incorrect contractual interpretation of the LionTree Agreement. LionTree's Fees became "payable" and "due" "promptly at the closing of [the] Transactions" with Vodafone, Rakuten, American Tower, and Samsung, entitling Delclaux to fees totaling $828,888.13. (R:70:9–11; 76:11; 127:18). The language correctly construed, the Court should direct

entry of summary judgment in Delclaux's favor for $828,888.13 owed in fees for AST's breaches. (R:127:17–18).

> ### ii.     Undisputed Evidence Proves AST Breached the LionTree Agreement by Failing to Pay Delclaux for Fees Owed Under the Second Tail.

The same is true for AST's breaches under the Second Tail period. (R:70:11–12). As Delclaux set forth above (Point III.B.ii), Fees to LionTree, and thus to Delclaux, were triggered under the Second Tail if (a) AST or LionTree caused AST or a third party "to be acquainted" with one another or "engaged in" and effort to "bring" that third party and AST "into contact" or "communication" during the Term and (b) a Transaction is consummated with that third party during the Second Tail period. (R:127:19).

Again, it was undisputed that AST entered into transactions during this time frame with Vodafone (October 16, 2019), Rakuten (February 4, 2020), and Samsung (February 26, 2020). (R:72:8–9). With the consummated transactions established, Delclaux only needed to show undisputed evidence of LionTree or Delclaux's introduction or engagement in effort to bring AST into contact with Vodafone, Rakuten, and Samsung during the term. LionTree's contact logs for work

performed undisputedly establish that LionTree initiated contact with Vodafone and Samsung in January 2018 (R:70-18:26), which was not denied by the investors themselves (R:70-7; 72-4). Likewise, Delclaux provided undisputed deposition testimony that AST contacted Rakuten through its subsidiary Aliostar "promptly" after March 4, 2019. (R:72-13:101). The undisputed record again established, under correct construction of the LionTree Agreement, that the magistrate judge was required to direct summary judgment in Delclaux's favor for the fees owed to Delclaux pursuant to the Second Tail. (R:127:19).

### iii. Undisputed Evidence Proves AST Breached the LionTree Agreement by Failing to Pay Delclaux for Fees Owed Under the ROFR.

Finally, there was no dispute in the district court that AST failed to offer LionTree the opportunity to represent it as to the Transactions with Vodafone, Rakuten, American Tower, Samsung, or New Providence. (R:76:11 (¶¶53, 55; 81:7 (same)). Had AST done so, LionTree, and thus Delclaux, would have earned fees at least in the amounts provided by the LionTree Agreement and the Finder's Fee Agreement. (R:70-4:3); *Fordham Fin. Mgmt. Inc. v. Rekor Sys. Inc.*, No 654571/2020, 2022 WL 10085807, at *5 (N.Y. Sup. Ct. Oct. 7. 2022)

(awarding amount of damages set at percentage due under the parties' contract as calculated from the gross proceeds of the sale reported to the SEC). Again, where the magistrate judge's incorrect contractual interpretation was the dispositive factor in denying Delclaux summary judgment, the opposite result—summary judgment for Delclaux for damages in the amount of $828,888.13—is required on correct construction for AST's breach.

### E.   The District Court Improperly Adopted the Magistrate Judge's Report and Recommendation Over Delclaux's Objections.

The magistrate judge's errors patent, *see* Points III.A–D, *supra*, the district court failed its obligation to conduct a *de novo* review based on Delclaux's specific objections. (R:127:2–8). Specifically, where the magistrate judge's interpretation of the contracts at issue ran afoul of the applicable New York law, the district court was required to reject the recommended reasoning, as set forth above. Points III.A–D, *supra*.

"If a party to the proceeding timely objects to the magistrate judge's proposed findings or recommendations, the district court must conduct a *de novo* review of the objected-to findings or recommendations. 28 U.S.C. § 636(b)(1)(A). This requires the district court's independent

consideration of the disputed facts, based on the evidence before the court. *LoConte v. Dugger*, 847 F.2d 745, 750 (11th 1988).

The core legal issue before the district court was the magistrate judge's approach to interpreting a contract. The court's role is to "ascertain the intention of the parties at the time they entered into the contract." *CBRE Inc. v. Pace Gallery of N.Y. Inc.*, No. 17-02452, 2021 WL 1198644, at *6 (S.D.N.Y. Mar. 30, 2021) (citation omitted). "If that intent is discernible from the plain meaning of the language of the contract, there is no need to look further." *Id.* If the language unambiguously conveys the parties' intent, extrinsic evidence may not be properly received, and a court "must be careful not to alter the terms of the agreement." *Metro. Life Ins. Co. v. RJR Nabisco Inc.*, 906 F.2d 884, 889 (2d Cir. 1990). To the point, "[c]ourts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." *Slattery Skanksa, Inc. v. Am. Home Assur. Co.*, 885 N.Y.S.2d 264, 273 (2009). Additionally, if ambiguity is found, it must be resolved—as well as all inferences drawn—***against*** the moving party, which has the burden of establishing that no facts material to the outcome of the

litigation are in dispute. *Id.* For failure to do so, the district court committed reversible error.

## CONCLUSION

For the above reasons, Delclaux requests the Court set aside the final judgment, and vacate the underlying summary judgment, and remand with instructions to dismiss the cause for lack of subject matter jurisdiction. In the alternative, Delclaux requests the Court to reverse the summary judgment and remand with instructions (i) for entry of summary judgment on the Amended Counterclaim in Delclaux's favor for $828,888.13 in damages for fees owed or, in the alternative, (ii) for further proceedings.

Respectfully submitted,

/s/ *Bethany J. M. Pandher*____
Bethany J. M. Pandher

Joseph J. Mamounas
Adrian Nuñez
Bethany J. M. Pandher
Greenberg Traurig, P.A.
Wells Fargo Center, Suite 4400
333 Southeast Second Avenue
Miami, Florida 33131
Telephone: 305.579.0500
mamounasj@gtlaw.com
nuneza@gtlaw.com
bethany.pandher@gtlaw.com
miamiappellateservice@gtlaw.com

*Counsel for Defendant-Appellant,*
*Delclaux Partners SA*

## CERTIFICATE OF COMPLIANCE

I certify that this document complies with the length limit of Fed. R. App. P. Rule 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 10,177 words.

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared using Microsoft Word 2010 in Century Schoolbook, 14-point font.

/s/ *Bethany J. M. Pandher*____
Bethany J. M. Pandher

## CERTIFICATE OF SERVICE

I certify that on April 8, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF and that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *Bethany J. M. Pandher*____
Bethany J. M. Pandher